**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CASE NO.** |
| **Plaintiff,** | **JUDGE** |
| **vs.** | **INDICTMENT** |
| **TERRY J. BOUTWELL, JR.,** **TIFFANY A. STROBL,** and **SHALITHA R. SCHEXNAYDER,** | 18 U.S.C. § 1343 18 U.S.C. § 1956(h) 18 U.S.C. § 1956(a)(1)(B)(i) 18 U.S.C. § 2 |
| **Defendants.** | **FORFEITURE ALLEGATIONS** |

**THE GRAND JURY CHARGES:**

All dates and times in this Indictment are alleged to be "on or about," "in and around," or "through and including" the specific dates stated.

## INTRODUCTION

At times relevant to this Indictment:

1.     From at least 2015, through at least 2017, the precise dates being unknown to the Grand Jury, Defendants **TERRY J. BOUTWELL, JR., TIFFANY A. STROBL,** and **SHALITHA R. SCHEXNAYDER,** together with others, both known and unknown to the Grand Jury, engaged in a conspiracy to launder the proceeds of an online vehicle-sale scam. The perpetrators of this scheme to defraud created online sales listings on websites such as Craigslist.com and Cars.com for vehicles they were pretending to sell. In truth, the perpetrators lacked any ownership or possession of the vehicles they offered for sale. The perpetrators of the scam enticed buyers by below-market pricing and transactional security allegedly offered through eBay's Buyer Protection Program. In fact, the perpetrators of the scam had no relationship with eBay, and the offer of eBay Buyer Protection was fraudulent.

2.      As part of the scheme to defraud, victims would initiate contact with an online "seller," who was using a fake name and backstory in connection with the listing. Oftentimes, the seller stated that he or she needed to sell the vehicle quickly because he or she was a member of the military facing a duty-station reassignment or was a recent divorcée in need of money.

3.      In furtherance of the scheme to defraud, the perpetrators established multiple telephone numbers using "FreedomVoice," a web-based phone system. These telephone numbers were selected to include the numbers "3229" after the area code and prefix. The numbers "3229" correspond to the letters "E-B-A-Y" on standard telephones. Victim-buyers were then referred to a fictitious eBay representative at those telephone numbers to complete their purchases.

4.      Having enticed the victims to purchase the vehicles through below-market pricing and claims of transactional security, the perpetrators of the scheme to defraud then sent invoices to the buyers that appeared to be from eBay. The perpetrators of the scam also provided bank account information and directed the buyers to wire funds to any number of bank accounts or to provide card information for pre-paid debit cards that were then drawn upon by various merchant service accounts. In part, these bank and merchant service accounts were controlled by **BOUTWELL, STROBL, SCHEXNAYDER**, and other individuals who established nominee-accounts (or "mule accounts") at their direction.

5.      In furtherance of the scheme to defraud, **BOUTWELL, STROBL, SCHEXNAYDER**, and others also registered business entities with names that were designed to appear to have some relation to eBay's Buyer Protection Program—for example, EEBPA LLC and EBPA LLC—when, in fact, these entities had no relation to eBay or its Buyer Protection Program. Victim-buyers, however, believed they were wiring funds or submitting their pre-paid debit card information to be held in escrow as part of eBay's Buyer Protection Program.

2

6.     In furtherance of the scheme to defraud, **BOUTWELL, STROBL, SCHEXNAYDER**, and others established and used multiple bank accounts in their own names and in the names of their nominee companies. **BOUTWELL, STROBL, SCHEXNAYDER**, and others funneled more than $5 million in proceeds from the vehicle-sale scam, from nearly 600 victims located throughout the United States, into these accounts. These funds were not used for the purposes claimed by perpetrators of the scam, and the vehicles were not provided to the victims.

7.     In furtherance of the scheme to defraud, the perpetrators promptly withdrew the victims' funds from these accounts in cash, cashiers' checks, or other electronic transfers. **BOUTWELL, STROBL, SCHEXNAYDER**, and others then used the victims' funds to: (1) transfer money to other co-conspirators via FedEx; (2) transfer money to other co-conspirators via in-person "cash drops"; (3) redeposit money into other bank accounts under the control of various co-conspirators; and (4) purchase bitcoins. These financial transactions were designed, in whole or in part, to conceal the nature, location, source, ownership, and control of the fraud proceeds. Several of these transactions were also in excess of $10,000.

## RELEVANT INDIVIDUALS, ENTITIES, AND ACCOUNTS

8.     In furtherance of the scheme to defraud, the perpetrators formed several business entities, many of which were shell companies without significant legitimate assets or operations.

9.     On March 27, 2015, **BOUTWELL** formed EEBPA LLC, a limited liability shell company, and registered it with the Ohio Secretary of State's office, in the Southern District of Ohio. **BOUTWELL** listed himself as the point of contact, billing name, and sole member of EEBPA LLC. **BOUTWELL** then opened at least ten bank accounts in EEBPA LLC's name, including Bank of America account x0488 (opened on 4/8/2015) and PNC account x3485 (opened on 4/6/2015), for which he was the sole signatory on the accounts.

3

10. On June 8, 2015, **BOUTWELL** formed EBPA LLC, a limited liability shell company, and registered it with the Washington, D.C., Department of Consumer and Regulatory Affairs. **BOUTWELL** listed himself as the point of contact and billing name for the registration, but **STROBL** was listed as the sole organizer of EBPA LLC. **STROBL** then opened at least twenty-nine bank accounts in EBPA LLC's name, including Capital One Bank accounts x3109 and x3117 (both opened on June 22, 2015), for which she was the sole signatory on the accounts.

11. Beginning in May 2015, **BOUTWELL** and **STROBL** formed and registered several other limited liability corporations ("LLCs") in the District of Columbia, Florida, Virginia, and elsewhere. Each of these LLCs had similar sounding names, designed to appear affiliated with eBay and its Buyer Protection Program, including EEBP LLC (Florida), EEBPA LLC (Florida), EMBP Services LLC (Washington, D.C.), EMBP Associates LLC (Florida), Evil Boy Productions LLC (Virginia), and Enigma Boy Protection Advisors LLC (Florida), to name a few. **BOUTWELL** or **STROBL** were listed as the point of contact or billing name for each of these registrations, but they listed a different member of the conspiracy (a "mule") as the relevant LLC's member or organizer. At the direction of **BOUTWELL**, **STROBL**, and others, the mule listed for each LLC then opened numerous bank accounts in that LLC's name (the "mule accounts").

12. On November 25, 2015, **SCHEXNAYDER** formed Orixa LLC, a limited liability shell company, and registered it with the Florida Secretary of State's office. **SCHEXNAYDER** was listed as the manager and registered agent for Orixa LLC. **SCHEXNAYDER** then opened at least six bank accounts or merchant service accounts in Orixa LLC's name, including JP Morgan Chase Bank account x5899 (opened on 3/8/2016), for which she was the sole signatory on the account, and an associated Chase "Paymentech" Merchant Service account x1490 (opened on 3/30/2016).

4

13.     On March 9, 2016, at the direction of **BOUTWELL** and others, "L.S." (not charged in this Indictment) formed Elma's Boutique Personal Assistants LLC, a limited liability shell company, and registered it with the Florida Secretary of State's office. "L.S." was listed as the manager for Elma's Boutique Personal Assistants LLC. "L.S." then opened at least two bank accounts in the name of Elma's Boutique Personal Assistants LLC, including Fifth Third Bank account x4621 (opened on 3/21/2016) and Manufacturers and Traders Trust Company ("M&T") Bank account x2272 (opened on 3/23/2016), for which she was the sole signatory on the accounts.

## THE SCHEME TO DEFRAUD

The following examples are illustrative of how the scheme to defraud typically operated. They are not an exhaustive description of the scheme to defraud or how it operated.

### Buyer "A.P."

14.     A.P., a resident of the Southern District of Ohio, was interested in purchasing a Polaris all-terrain vehicle ("ATV"). In April 2015, A.P. came across an advertisement on Craigslist.com for such an ATV. The listed seller ("Gordon Bordelon") represented that he was in the U.S. Air Force, and that he was being transferred from Utah to Alaska. The seller stated that he was looking to sell his ATV, which was worth approximately $13,000, for just $7,200.

15.     A.P. corresponded with the seller, and the two ultimately agreed on a purchase price of $7,200. Afterward, A.P. was contacted by someone using the name "Alex Taggert," who represented that he was an employee of eBay Finance. A.P. later received an email detailing the terms of the transaction, and Taggert called A.P. to provide the bank account and routing number for where A.P. was to wire the funds. Taggert told A.P. to wire the funds to an EEBPA bank account, and he stated that EEBPA stood for eBay Electronic Buyer Protection.

16.     A.P. was informed that his funds would be held in escrow in the EEBPA account for five days and that the ATV would be shipped once EEBPA received the funds. A.P. was also informed that he would have five days to decide whether he wanted to keep the ATV, and that he could return it during that inspection period and receive a full refund if he was not satisfied.

17.     On April 22, 2015, A.P. sent a $7,200 wire transfer from his Ally Bank account to the EEBPA bank account, as directed. The same day, EEBPA LLC Bank of America account x0488 (for which **BOUTWELL** was the sole signatory) received a $7,200 wire transfer from A.P.

18.     After wiring the funds, A.P. received a confirmation email from Taggert that the funds had been received. A.P., however, never received the Polaris ATV or any other vehicle. A.P. then contacted Taggert (by phone) and the listed seller (by email) in an attempt to cancel the transaction and receive a refund. Despite receiving some vague assurances from both Taggert and the seller, A.P. never received a refund for his attempted purchase of the ATV.

19.     On April 22, 2015, **BOUTWELL** made a $7,200 cash withdrawal—the same amount as the funds that A.P. wired in—from EEBPA LLC Bank of America account x0488 at a bank branch in Maryland.

### Buyer "R.K."

20.     R.K., a resident of the Southern District of Ohio, was also interested in purchasing a Polaris ATV. In April 2015, R.K. came across an advertisement on Craigslist.com for such an ATV. The listed seller stated that he was in the Air Force, was moving to Alaska, and, therefore, had to sell the vehicle. The seller indicated that he would sell the ATV for $7,200, which was less than the average asking price for similar ATVs, which R.K. believed to be around $10,000.

21.     R.K. was told that the sale would take place using eBay and was given a telephone number to call.  When R.K. called the number, he heard a voice message stating that he had reached eBay, and he was then put in touch with someone whom he believed to be an eBay representative. R.K. received instructions from the eBay representative over the phone on where to wire the funds. R.K. also received an invoice that appeared to be from eBay for the purchase.

22.     On April 23, 2015, R.K. sent a $7,200 wire transfer from his Wright-Patt Credit Union account to the bank account, as directed.  The same day, EEBPA LLC Bank of America account x0488 (for which **BOUTWELL** was the sole signatory) received a $7,200 wire transfer from R.K.

23.     Sometime later, R.K. learned that he had been defrauded, and he contacted his credit union in an attempt to stop the wire transfer.  R.K.'s credit union was unable, however, to stop the wire transfer in time.  R.K. later attempted to contact the listed seller and the eBay representative, but he was unable to do so.  R.K. never received the Polaris ATV or any other vehicle, nor did he receive a refund for his attempted purchase of the ATV.

24.     On April 23, 2015, **BOUTWELL** made a $7,200 cash withdrawal—the same amount as the funds that R.K. wired in—from EEBPA LLC Bank of America account x0488 at a bank branch in Maryland.

### Buyer "J.F."

25.     J.F., a resident of the Southern District of Ohio, was likewise interested in purchasing a Polaris ATV.  In May 2015, J.F. came across an advertisement on Craigslist.com for such an ATV.  The listed seller, who went by the name of "Staff Sergeant Scott Brownell," stated that he was in the Air Force, was moving from Nebraska to Alaska, and, therefore, had to sell the vehicle.  The seller indicated that he would sell the ATV for $6,500.

26. J.F. corresponded with the seller via email, and the two ultimately agreed on a purchase price of $6,400. The seller informed J.F. that the sale would take place through eBay Motors' buyer protection program, which would provide J.F. with free shipping and a five-day grace period to complete the sale. From that point on, all communications regarding the sale went through someone using the name "Alex," who held himself out to be an eBay Motors employee. J.F. received an invoice that appeared to be from eBay Motors, as well as instructions on where to wire the funds.

27. On May 19, 2015, J.F. sent a $6,400 wire transfer from his Park National Bank account to the bank account, as directed. The same day, EEBPA LLC PNC account x3485 (for which **BOUTWELL** was the sole signatory) received a $6,400 wire transfer from J.F.

28. Despite wiring the funds, J.F. never received the ATV or any other vehicle. J.F. then contacted the real eBay Motors department, which informed him that he had been scammed, and that eBay motors would never guarantee a third-party sale advertised on Craigslist.com. J.F. has never received a refund for his attempted purchase of the Polaris ATV.

29. On May 19, 2015, **BOUTWELL** made a $6,400 cash withdrawal—the same amount as the funds that J.F. wired in—from EEBPA PNC Bank account x3485 at a bank branch in Virginia.

### Buyer "C.S."

30. C.S. and her husband were interested in purchasing a motor home. In June 2015, they came across an advertisement on Craigslist.com for such a motor home. C.S. contacted the listed seller, who informed her that he was in the military, was going to be stationed overseas, and, therefore, had to sell the motor home quickly. The seller also stated that the cost of shipping would be included with the cost of the vehicle.

31.    The seller and C.S. ultimately agreed on a purchase price of $8,500, which she believed to be a good deal.  C.S. believed that the sale involved eBay, and she spoke with someone besides the seller who gave her instructions on how to handle the financial transaction.  C.S. received details from this person regarding the bank account for where to wire the funds.

32.    On June 24, 2015, C.S. sent an $8,500 wire transfer to the bank account, as directed. The same day, EBPA LLC Capital One Bank account x3109 (for which **STROBL** was the sole signatory) received an $8,500 wire transfer from an account in the name of C.S.'s husband, "R.S."

33.    C.S. and her husband never received the motor home or any other vehicle.  When the motor home did not arrive as promised, C.S. attempted to contact the listed seller but was unsuccessful.  C.S. and her husband never received a refund for their attempted purchase of the motor home.

34.    On June 24, 2015, **STROBL** made an $8,500 cash withdrawal—the same amount of funds that C.S. wired in—from EBPA LLC Capital One Bank account x3109.

### Buyer "M.I."

35.    M.I. was also interested in purchasing a motor home.  In June 2015, he came across an advertisement on Craigslist.com for such a motor home.  The listed seller stated that he was in the military and was living in Utah, but was going to be moving overseas, and, therefore, had to sell the motor home.

36.    The seller directed M.I. to a "mediator" from eBay, who would act as a middle man for the transaction.  Ultimately, M.I. agreed to a purchase price of $7,100 for the motor home, and he later received instructions on where to wire the money.

37.     On June 25, 2015, M.I. sent a $7,100 wire transfer to the bank account, as directed. The same day, EBPA LLC Capital One Bank account x3117 (for which **STROBL** was the sole signatory) received a $7,100 wire transfer from M.I.

38.     Despite wiring the funds, M.I. never received the motor home or any other vehicle. M.I. grew suspicious and called his bank, which informed him that the money had already been withdrawn from his account. M.I. also contacted eBay to see if the mediator was employed there or if the company was aware of similar transactions. M.I. was told that the transaction involving a sale was strictly between the buyer and the seller. M.I. never received a refund for his attempted purchase of the motor home.

39.     On June 25, 2015, **STROBL** made a $7,100 cash withdrawal—the same amount of funds that M.I. wired in—from EBPA LLC Capital One Bank account x3117.

### Buyer "C.W."

40.     C.W. and her husband were also interested in purchasing a motor home. In June 2015, C.W.'s husband came across an online advertisement for such a motor home at a price well below market value. The listed seller stated that he was in the military, was headed overseas, and, therefore, had to sell the motor home.

41.     C.W. corresponded with the seller, and they ultimately agreed on a purchase price of $7,800. The seller represented that the sale would take place through eBay's escrow service, and that C.W. and her husband would have a period of time to inspect the motor home and return it if they were not satisfied. C.W. later received instructions on where to wire the money.

42.     On June 26, 2015, C.W. sent a $7,800 wire transfer to what she believed was an eBay account, as directed. The same day, EBPA LLC Capital One Bank account x3109 (for which **STROBL** was the sole signatory) received a $7,800 wire transfer from C.W.

43.     Despite wiring the funds, C.W. and her husband never received the motor home or any other vehicle. C.W.'s husband, having grown suspicious, attempted to contact the seller, who replied back once but then stopped all contact. C.W. and her husband have never received a refund for their attempted purchase of the motor home.

44.     On June 26, 2015, **STROBL** made a $7,800 cash withdrawal—the same amount of funds that C.W. wired in—from EBPA LLC Capital One Bank account x3109.

### Buyer "C.M."

45.     C.M. was interested in purchasing a Volkswagen Bus. In April 2016, he came across an advertisement on Craigslist.com for such a bus. The listed seller ("Allen Parker") stated that he was in the U.S. Air Force. The seller indicated that he would like to sell the bus for $7,500.

46.     The seller directed C.M. to call an eBay representative to confirm the details of the transaction. C.M. then called the eBay representative, named "Alex," who confirmed the purchase price and provided instructions on where to wire the money.

47.     On April 6, 2016, C.M. sent a $7,500 wire transfer from his USAA Bank account to an "EBPA" bank account, as directed. The same day, Elma's Boutique Personal Assistants LLC Fifth Third Bank account x4621 (for which "L.S." was the sole signatory) received a $7,500 wire transfer from C.M.

48.     Despite wiring the funds, C.M. never received the bus or any other vehicle. C.M. attempted to contact both the seller and the eBay representative by telephone, but the numbers provided were no longer in service. C.M. has never received a refund for his attempted purchase of the Volkswagen Bus.

49.     On April 7-8, 2016, portions of the proceeds from the fictitious Volkswagen Bus sale to C.M. flowed from Elma's Boutique Personal Assistants LLC Fifth Third Bank account x4621 (for which "L.S." was the sole signatory), to Orixa LLC Chase Bank account x5899 (for which **SCHEXNAYDER** was the sole signatory), as follows:

       a.     On April 7, 2016, two debit card purchases, totaling $1,619.71, were made from Elma's Boutique Personal Assistants LLC Fifth Third Bank account x4621 to Orixa LLC Chase Merchant Service account x4190 (which **SCHEXNAYDER** established).

       b.     On April 8, 2016, a $1,619.71 transfer was made from Orixa LLC Chase Merchant Service account x1490 to Orixa LLC Chase Bank account x5899 (for which **SCHEXNAYDER** was the sole signatory).

**Buyer "S.D."**

50.     S.D. was interested in purchasing a truck.  In April 2016, he came across an online advertisement for such a truck.  S.D. corresponded with the listed seller via email and was then asked for his contact information so that a representative from eBay could reach out to finalize the terms of the transaction, which included a purchase price of $15,000.

51.     On April 25, 2016, a representative from eBay contacted S.D. via email and provided a confirmation number for the sale as well as shipping and purchasing instructions for where to wire the money.

52.     On April 26, 2016, S.D. sent a $15,000 wire transfer from his First National Bank of Staunton account to the bank account, as directed.  The same day, Elma's Boutique Personal Assistants LLC M&T Bank account x2272 (for which "L.S." was the sole signatory) received a $15,000 wire transfer from S.D.

53.    Despite wiring the funds, S.D. never received the truck or any other vehicle. S.D. then contacted an actual representative from eBay, who informed him that eBay's vehicle sales practices do not operate that way, and that he had been scammed. S.D. attempted to make contact with both the seller and the fictitious eBay representative but was unsuccessful. S.D. has never received a refund for his attempted purchase of the truck.

54.    Beginning on April 27, 2016, and continuing to and including May 10, 2016, portions of the proceeds from the fictitious truck sale to S.D. flowed from Elma's Boutique Personal Assistants LLC M&T Bank account x2772 (for which "L.S." was the sole signatory), to Orixa LLC Chase Bank account x5899 (for which **SCHEXNAYDER** was the sole signatory), as follows:

a.    On April 27, 2016, two transfers of money, totaling $3,195.54, were made from Elma's Boutique Personal Assistants LLC M&T Bank account x2272 to Orixa LLC Chase Merchant Service account x1490 (which **SCHEXNAYDER** established). The same day, a $3,195.54 transfer was made from Orixa LLC Chase Merchant Service account x1490 to Orixa LLC Chase Bank account x5899 (for which **SCHEXNAYDER** was the sole signatory).

b.    On May 9, 2016, a transfer of $971.20 was made from Elma's Boutique Personal Assistants LLC M&T Bank account x2272 to Orixa LLC Chase Merchant Service account x1490 (which **SCHEXNAYDER** established). The same day, a $971.20 transfer was made from Orixa LLC Chase Merchant Service account x1490 to Orixa LLC Chase Bank account x5899 (for which **SCHEXNAYDER** was the sole signatory).

c.      On May 9, 2016, a transfer of $1,207.19 was made from Elma's Boutique Personal Assistants LLC M&T Bank account x2272 to Orixa LLC Chase Merchant Service account x1490 (which **SCHEXNAYDER** established). The same day, a $1,207.19 transfer was made from Orixa LLC Chase Merchant Service account x1490 to Orixa LLC Chase Bank account x5899 (for which **SCHEXNAYDER** was the sole signatory).

d.      On May 10, 2016, a transfer of $2,957.63 was made from Elma's Boutique Personal Assistants LLC M&T Bank account x2272 to Orixa LLC Chase Merchant Service account x1490 (which **SCHEXNAYDER** established). The same day, a $2,957.63 transfer was made from Orixa LLC Chase Merchant Service account x1490 to Orixa LLC Chase Bank account x5899 (for which **SCHEXNAYDER** was the sole signatory).

## COUNTS 1 through 3
### (Wire Fraud)

55.     Paragraphs 1 through 54 are incorporated here.

56.     On or about each of the dates set forth below, in the Southern District of Ohio and elsewhere, for the purpose of executing and attempting to execute the scheme to defraud described above, to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, the defendant, **TERRY J. BOUTWELL**, knowingly transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, the signals and sounds described below for each count:

| Count | Date | Wire Communication |
|-------|------|--------------------|
| 1 | 4/22/2015 | Wire transfer from A.P.'s Ally Bank account for $7,200 to EEBPA LLC's Bank of America account x0488 |
| 2 | 4/23/2015 | Wire transfer from R.K.'s Wright-Patt Credit Union account for $7,200 to EEBPA LLC's Bank of America account x0488 |
| 3 | 5/19/2015 | Wire transfer from J.F.'s Park National Bank account for $6,400 to EEBPA LLC's PNC account x3485 |

**All in violation of 18 U.S.C. §§ 1343 and 2.**

**COUNT 4**
**(Money Laundering Conspiracy)**

57.     Paragraphs 1 through 56 are incorporated here.

58.     From at least 2015, through at least 2017, the precise dates being unknown to the Grand Jury, in the Southern District of Ohio and elsewhere, Defendants **TERRY J. BOUTWELL, TIFFANY A. STROBL,** and **SHALITHA R. SCHEXNAYDER** knowingly combined, conspired, and agreed with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957—namely:

a.     to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity—that is, wire fraud—knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.     to knowingly engage and attempt to engage, in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity—that is, wire fraud—in violation of Title 18, United States Code, Section 1957.

**All in violation of 18 U.S.C. § 1956(h).**

<h3 align="center">COUNTS 5 through 7<br>(Concealment Money Laundering)</h3>

59.    Paragraphs 1 through 58 are incorporated here.

60.    On or about the dates set forth below, in the Southern District of Ohio and elsewhere, the defendant, **TERRY J. BOUTWELL**, knowingly conducted and attempted to conduct the following financial transactions affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity—that is, wire fraud—knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that, while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity:

| Count | Date | Financial Transaction |
|---|---|---|
| 5 | 4/22/2015 | Cash withdrawal in the amount of $7,200 from EEBPA LLC's Bank of America account x0488 |
| 6 | 4/23/2015 | Cash withdrawal in the amount of $7,200 from EEBPA LLC's Bank of America account x0488 |
| 7 | 5/19/2015 | Cash withdrawal in the amount of $6,400 from EEPBA LLC's PNC account x3485 |

**All in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.**

16

## FORFEITURE ALLEGATION A

61.     Paragraphs 1 through 56 are incorporated here for purposes of alleging forfeitures to the United States.

62.     Upon conviction of any of the offenses alleged in Counts 1 through 3 of this Indictment, the defendant, **TERRY J. BOUTWELL, JR.**, shall forfeit to the United States, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 981(a)(1)(C), any property, real or personal, constituting, or derived from, proceeds traceable to such offense, including, but not limited to, a sum of money equal to the amount of proceeds the defendant obtained as a result of the offense in the form of a forfeiture money judgment.

63.     If any of the property described above, as a result of any act or omission of the defendant, **TERRY J. BOUTWELL, JR.**:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of substitute property of the defendant, **TERRY J. BOUTWELL, JR.**, up to the value of the forfeitable property, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

**Forfeiture pursuant to 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C), and Rule 32.2 of the Federal Rules of Criminal Procedure.**

## FORFEITURE ALLEGATION B

64.     Paragraphs 1 through 60 are incorporated here for purposes of alleging forfeitures to the United States.

65.     Upon conviction of any of the offenses alleged in Counts 4 through 7 of this Indictment, Defendants **TERRY J. BOUTWELL, JR., TIFFANY A. STROBL,** and **SHALITHA R. SCHEXNAYDER** shall forfeit to the United States, pursuant to 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property, including, but not limited to, a sum of money equal to the amount of proceeds each defendant obtained as a result of the offense in the form of a forfeiture money judgment.

48.     If, as a result of any act or omission of Defendants **TERRY J. BOUTWELL, JR., TIFFANY A. STROBL,** and **SHALITHA R. SCHEXNAYDER,** the forfeitable property so described, or any portion thereof:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

        e.     has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of substitute property of Defendants **TERRY J. BOUTWELL, JR., TIFFANY A. STROBL,** and **SHALITHA R. SCHEXNAYDER** up to the value of the forfeitable property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

Forfeiture pursuant to 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1), and Rule 32.2 of the Federal Rules of Criminal Procedure.

A TRUE BILL

s/Foreperson
**FOREPERSON**

**BENJAMIN C. GLASSMAN**
**UNITED STATES ATTORNEY**

s/Noah R. Litton
**NOAH R. LITTON (0090479)**
**Assistant United States Attorney**